## Brown, Appellant, *v.* Carey.

*Evidence—Competency of witnesses—Interest—Death of party to contract—Act of May 23, 1887.*

In ejectment against a husband by one who claims title under a sheriff's deed on an execution against the husband, where the defence is based on the title of the wife and the vendor of the wife is dead, both husband and wife are competent witnesses to the purchase having been made by the wife and to the deed, made some years after the purchase and not recorded at the time of the sheriff's sale, having by mistake been made to the husband. They are not within the exception of clause (e), § 5, of the act of May 23, 1887.

*Husband and wife—Real estate—Possession—Notice.*

A married woman is permitted to acquire and hold property, and her possession of it, while living with her husband, as respects notice to purchasers, has the same effect that is allowed to a possession by the husband of his own property. In the absence of a recorded title in her husband inconsistent with it, such possession by her is sufficient to put a purchaser on inquiry. A husband may live with his wife on her farm and assist in tilling it, without impairing her title to the farm or its products, or subjecting either to liability for his debts.

Argued Oct. 5, 1891.  Appeal, No. 209, Oct. T., 1890, by plaintiff, Henry Brown, from judgment of C. P. Jefferson Co.,

Sept. T., 1888, No. 318, on verdict for defendant, John F. Carey. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Ejectment.

The facts appear by the opinion of the Supreme Court.

Plaintiff's second point, refused on the trial by WHITE, P. J., specially presiding, was : " That under all the evidence in the case the verdict of the jury should be for the plaintiff." [4]

Plaintiff's seventh point and the answer thereto were as follows :

" 7th. That there is no sufficient evidence to submit to the jury of a mistake in the name of the vendee in the deed from McPherson as it was originally written and delivered; and if the jury find the deed was originally made to John F. Carey their verdict should be for the plaintiff."

*Answer :* " We have already explained, in our general charge, the nature and effect of the alteration and changing the name of John F. Carey and inserting the name of Sarah Ann Carey therefor, after the acknowledgment and delivery of the deed. Such change would not divest the estate created by it, certainly not as against intervening interests and rights. We have not considered, so far as the legal estate thereby vesting, this alteration as a mistake. We agree, there is not sufficient evidence of mistake to submit to this jury so as to authorize a reformation of the deed and thereby vest the legal title to the land in Mrs. Carey. It does not appear to be denied the deed was originally made to John F. Carey. The alteration made would not, as against the plaintiff, divest such title as the deed conveyed to John F. Carey, and the plaintiff would have the right to recover such title as that deed conveyed to Mr. Carey, and would have the right to recover unless it is found Mrs. Carey purchased, paid for to Joseph McPherson with her own money, and took possession of and held the land, under such purchase —as we have explained to you in our general charge, in this respect." [5]

Defendant's first point affirmed, was as follows :

" 1st. That if the jury find from the evidence that Sarah A. Carey, wife of John F. Carey the defendant, purchased the land in dispute from Joseph McPherson by articles of agreement in

1854, and that she paid for the land with her own money given her by her mother, and that in the spring of 1855 she and her husband went into possession under the purchase, made improvements and has resided there continuously since that time, the title so acquired and possession so taken was the title and possession of Sarah A. Carey, and would confer upon her a good title, and one that will prevail over a title acquired from the sheriff under a sale upon the writ of fieri facias to No. 105 of December term, 1878, issued upon the judgment of Hastings & Bell for use v. John F. Carey, at No. 156 of May term, 1878, and the verdict of the jury should be for the defendant." [6]

*Errors assigned* were (1) refusing to instruct the jury to disregard the testimony of John F. Carey and (2) of Sarah Ann Carey; (3) the admission of the testimony of John F. Carey, quoting bill of exceptions and evidence; (4–6) the answers to the points as above, quoting the points and answers.

*G. A. Jenks,* with him *Charles Corbet,* for appellant, argued, chiefly, that there was no sufficient evidence of the original purchase by Mrs. Carey.

Both the defendant and his wife were incompetent witnesses under the act of 1887. Joseph McPherson was dead and his right to the estate had passed, by his own act and by the act of the law, to the appellant.

*H. C. Campbell,* with him *A. C. White,* for appellee, cited as to the competency of defendant and his wife, Duffield v. Hue, 129 Pa. 94; and as to the possession of the wife, Hoar v. Axe, 22 Pa. 381; Manderbach v. Mock, 29 Pa. 47; Holcomb v. Peoples Savings Bank, 92 Pa. 338; Sill v. Swackhammer, 103 Pa. 7; Hottenstein v. Lerch, 104 Pa. 454.

Where land is bought by a husband for a wife and with her money, he taking the deed in his own name, a resulting trust is raised in her favor even against her husband's creditors: Hay v. Martin, 14 Atl. Rep. 334.

OPINION BY MR. JUSTICE MCCOLLUM, April 25, 1892:

This is an action of ejectment brought by Henry Brown, appellant, against John F. Carey, appellee, for fifty acres of land in Bell township, Jefferson county. The appellant claims title to the land under a deed from John Wilson & Son, who purchased it at a sheriff's sale on a judgment and execution against

the appellee.   The sale to Wilson & Son was on Dec. 11, 1878, and the sheriff's deed to them was delivered on Feb. 20, 1879. The judgment on which the sale was made was entered on Dec. 1, 1868, and the lien of it was continued by amicable revivals.   Wilson & Son conveyed to Brown, Jan. 19, 1881. These facts are shown by the records and deeds, and are undisputed.   The defence made by the appellee is founded on his wife's title.   In 1854 Joseph McPherson owned the land in dispute, and sold it to Sarah Ann Carey, the wife of the appellee, for $150.   She then paid $125 of the price from money given to her by her mother, and, with her husband, took possession of the land, and has since resided on it.   Prior to Nov. 29, 1860, she paid the balance of the purchase money from the proceeds of timber which was cut on the land and sold by her direction. On the day last mentioned a deed was made by her vendor, in which, by his own or his scrivener's mistake, the name of John F. Carey was inserted as grantee.   This deed was received by the appellee for his wife, to whom he immediately delivered it, and she retained but did not record it.   The mistake in the name of the grantee was not known to her or her husband, and the explanation of their ignorance of it is found in the fact that neither could read writing.   When it was discovered, the deed was taken to the grantor, who promptly admitted the mistake, and, as he supposed, corrected it by inserting the name of Sarah Ann Carey in place of the name of John F. Carey.   The deed, thus altered, was recorded on June 10, 1879.   These facts are established by the verdict of the jury, and we think the evidence on which they were found is sufficient to support the verdict if the appellee and his wife are competent witnesses to matters occurring in the lifetime of Joseph McPherson, the grantor, who died before the trial.   If they are not competent to testify to such matters material to this issue, the judgment must be reversed, because their evidence was admitted by the court and considered by the jury.   In deciding this question it is important to keep distinctly in view the nature and subject of the controversy.   It does not involve the validity of the title of Joseph McPherson, the deceased grantor, and his estate cannot be affected by the result of it.   It is certain that he parted with his title by the sale in 1854, and the deed of Nov. 29, 1860.   The sale was to Sarah Ann Carey, and the deed to her

husband, who admits that she bought the land and paid for it from her separate estate. The appellant now has the title which the grantee acquired by this deed. What is it? Clearly the title which remained in the grantor after the sale and payment of the purchase money and before the conveyance—a naked legal title in trust for Sarah Ann Carey, the beneficial owner. The appellant takes nothing by the mistake in the deed, and the competency of the witnesses is not affected by it. If Sarah A. Carey had been named therein as grantee, the question of her and her husband's competency to testify to her purchase of the land with her own money would be the same as now. It is claimed that they are disqualified by clause (*e*), § 5 of the act of May 23, 1887, but we do not think so. They have no interest adverse to any right of the deceased grantor, and there is no party on the record " who represents his interest in the subject in controversy " within the intendment of the statutory provision relied on to exclude them. The possession of Mrs. Carey was consistent with her title, and sufficient, in the absence of a recorded title in her husband inconsistent with it, to put a purchaser on inquiry. A married woman is permitted to acquire and hold real and personal property, and her possession of it, as respects notice to purchasers, has the same effect that is allowed to a possession by her husband of his own property. A husband may live with his wife on her farm, and assist in tilling it without impairing her title to the farm or its products, or subjecting either to liability for his debts. The purchasers at the sheriff's sale acquired the title of the appellee, and transmitted it to the appellant. It is not sufficient on the facts found in the case to give him possession as against Mrs. Carey, and these facts are available to defeat his action. In conformity with the views expressed in this opinion the specifications are overruled.

Judgment affirmed.

May 4, 1892. Motion for reargument filed.

PER CURIAM, May 5, 1892. Motion denied.